## SAMUEL FELLER, Trustee, Appellant, v. MRS. M. A. McKILLIP et al., Respondents.

### Kansas City Court of Appeals; May 30, 1904.

1. **BILLS AND NOTES: Mortgages: Extension: "Fall Season."** Where the question is not so much the extension of time of the note as an extension of the mortgage securing the same, the fact that the mortgaged property is millinery goods will give a sufficiently definite meaning to the term, "Fall Season" used in the contract for the extension of the time of payment.

2. **CHATTEL MORTGAGES: Possession of Property: Mortgagee's Insecurity.** A chattel mortgage allowed the mortgagee to take possession of the mortgaged property whenever he deemed himself insecure. *Held*, the mere fact that the mortgagee may feel himself insecure is not conclusive, but it should appear that he had probable cause to feel himself insecure; however, it is not essential that there should be real danger, but that a reasonable man situated as the mortgagee is, might in good faith believe himself insecure. Cases considered.

3. ———: ———: **Damages: Interest.** In an inquiry of damages it is error to instruct the jury to add interest to the amount found since the statute only provides they may do so in their discretion.

Appeal from Jackson Circuit Court.—*Hon. S. C. Douglass,* Judge.

REVERSED AND REMANDED, *nisi.*

*Karnes, New & Krauthoff* for appellant.

(1) The manifest intention of the Legislature by this statute was that in this class of cases the question of interest as damages should be for the jury and not for the court. 121 Mo. 41; Hawkins v. Brick Co., 63 Mo. App. 68; Wheeler v. McDonald, 77 Mo. App. 213; Vermillion v. LeClare, 89 Mo. App. 64. (2) "The agreement extending the time must not only be valid

and binding in law, but .the time of the extension must be precisely and definitely fixed.'' Rucker v. Robinson, 38 Mo. 158; Savings Association v. Helmrick, 57 Mo. 101; Ins. Co. v. Carson, 31 Mo. 223; Russell v. Brown, 21 Mo. App. 55.

*James G. Smith* for respondent.

(1)   An appeal lies only from a final judgment and the abstract must show it. Mills v. McDaniels, 59 Mo. App. 331; Shaw v. Bryan, 39 Mo. App. 523; Kamerick v. Castleman, 29 Mo. App. 658; Hyatt v. Wolfe, 22 Mo. App. 191; Midland Co. v. Clary, 56 Mo. App. 268; State ex rel. v. Smith, 172 Mo. 627.   (2) However, all states, other than these that have ruled on "security clauses" in chattel mortgages of like import hold a contrary doctrine to Kansas and Wisconsin and these plaintiffs. The instruction herein complained of, number 3, given for defendants, is bottomed on the law as declared in case of Roy v. Goings, 96 Ill. 361. (3)   We do not find this phrase or a similar one ruled upon by the appellate courts of Missouri.   However, "unreasonable depreciation" and kindred terms have been ruled upon, to the effect that the depreciation must be substantial, and whether substantial or not, is for the jury to say.   Krebs v. Zumwalt, 91 Mo. App. 404; Hogan v. Akin, 181 Ill. 455; Roy v. Goings, 96 Ill. 361; Woods v. Gaar, Scott & Co., 93 Mich. 147; Deal v. Osborne & Co., 42 Minn. 105; Nash v. Larson, 80 Minn. 460; Hyer v. Sutton, 49 Hun 42; Hawver v. Bell (Sup. Ct.), 46 N. Y. St. 447; Barrett v. Hart, 42 Ohio 41; Newlins v. Olson, 22 Neb. 717; Brown v. Hogan, 49 Neb. 748; Lichtenberger v. Johnson, 32 Neb. 185; Plow Works v. Morr, 33 Neb. 215; Rector-Wilhelmy Co. v. Nissen, 35 Neb. 722; Brook v. Bayless, 6 Okla. —; Bank v. Teat, 4 Okla. 454.   (3)   Time of payment of chattel mortgage may be extended by parol agreement. Jones on Chattel Mortgages, sec. 704; King v. Greaves

& Ruff, 51 Mo. App. 544; Smith v. Ham, 51 Mo. App. 437.

BROADDUS, J.—This is an action in replevin. The property in controversy is a stock of millinery and a lot of store furniture and fixtures. On June 8, 1901, defendants executed a note payable to Frankel, Frank & Company for the sum of $905.30, due one day after date, bearing interest at the rate of eight per centum per annum from date, and on the same day executed a deed of trust conveying the property mentioned to the plaintiff as trustee. This conveyance was to secure the payment of said note, in which it was provided that whenever Frankel, Frank & Company may deem themselves insecure, the debt shall become due and the trustee shall at once take possession of said property.

On the eighth of July, 1901, one month after the date of the execution of said conveyance, the plaintiff trustee, at the request of the beneficiaries, instituted this suit and obtained possession of the property. The defendants filed a general denial to plaintiff's petition. They further claimed possession of the property and demanded its return. They also alleged its value to be $1,800 and that they were damaged to the full value of the property by reason of the taking and detention thereof. Other facts will appear further on in the course of the opinion.

The finding and judgment were for defendants from which plaintiff appealed.

Under the provisions of the mortgage or deed of trust, the note being payable one day after date, the plaintiff was entitled to possession of the property at any time after the note became due. But defendants sought to show that the debt and mortgage had been extended for a valuable consideration until the fall of said year; and there was some evidence to that effect, viz.: the defendant Carrie McKillip testified that after the execution of the mortgage, Daniel Lyons, one of the

beneficiaries, agreed with her that if she would stay in the store and keep the books and look after the business, they, Frankel, Frank & Company, "would carry them until fall," when the season would "open" and "we would be able to pay;" and that she did keep the books and look after the business, as she agreed to do. The evidence also showed that defendant Carrie owned the fixtures, but had no interest in the goods.

But plaintiff contends that the extension of time for the payment of a negotiable note should be for a *certain and definite* time. The question here is not so much as to the extension of time for the payment of the note as an extension of the mortgage itself. In view of the evidence that the property mostly was millinery goods for which there would be but little demand until the fall season began, it does seem that the extension of the mortgage to that season for such goods was sufficiently definite. As the plaintiff represented a firm of wholesale milliners and defendants were retail milliners, there can be no doubt but what all parties understood when the "fall season" for millinery goods would begin. The case of Weltner v. Riggs, 3 W. Va. 445, is in point. The contract was that the vendor would deliver to the vendee certain trees "this fall." The court held that the time should be limited to the last of the fall season for transplanting such trees. In Gordon v. Bank, 144 U. S. 103, it was held: "The evidence in this case does not tend to show a contract of extension for a valid consideration, and for a definite and certain time, binding upon the parties, and changing the nature of the contract as to the prejudice of the maker of the note." The writing in question was a negotiable promissory note and had been assigned. The rule of construction would, necessarily, be different in a case of the kind considered from that governing ordinary contracts, because governed by the law merchant which is a separate branch of jurisprudence.

The main question raised, however, is that the

property was taken because Frankel, Frank & Company deemed themselves insecure. And this gives rise to the question, what is meant by that expression in the mortgage? In Werner v. Bergman, 28 Kan. 60. the court said: "But if he (the mortgagor) chooses only to have inserted in the mortgage a clause that he shall have the right to the possession of the property until the mortgagee shall deem himself insecure, then he can only retain the property until the mortgagee does in fact deem himself insecure, and he has no right to question the grounds upon which the mortgagee entertains such feeling of insecurity." We quote further: "The only question at all material in such case is whether the mortgagee does in fact so feel; and if the mortgagee claims in fact that he has such feeling, and afterwards on the trial testifies that at the time he took possession of the property he had such a feeling, and if upon the facts of the case it is possible at all to believe that any person, however timid and fearful he might be, might have such a feeling, then it should be held that the mortgagee had a right to take possession of the property." The court adopted the Wisconsin doctrine. See Gage v. Weyland, 67 Wis. 566.

We can not approve of this doctrine as applied to the mortgagee who is generally more than doubly secure, yet in such cases he might swear that he had fears, as he was the most timid of men, for the most timid of men sometimes fear without reasonable cause. Mortgages are made most favorably to the mortgagees because they are in a position to dictate terms on account of necessities of mortgagors, therefore, such provisions should be reasonably construed in fairness to all parties. Fortunately, we are not left without precedent of the highest character for such construction. In Roy v. Goings, 96 Ill. 361, the court, in reviewing the decisions of the court of that State on the question, said: "The law on this subject as laid down in the

cases heretofore decided by this court is plainly this: that by such contract the mortgagee is made the sole judge of the crisis in question, but that judgment must be exercised in good faith and upon probable cause. He is not at liberty to judge capriciously, or upon a mere whim, or maliciously. As indicated in Furlong v. Cox, supra, in such cases the mere fact that the mortgagee declares that he feels himself unsafe and insecure is not conclusive. When that question is put in issue, and it appears from proofs that the mortgagee had no probable cause or reasonable grounds to feel himself unsafe and insecure, the taking must be held unlawful; but it is not essential in such case there should be real cause of danger. . . . It is sufficient for this purpose that the circumstances are such that a reasonable man thus situated might in good faith believe himself unsafe and insecure.'' The Supreme Court of Nebraska has gone still further in holding: ''The discretion conferred upon the mortgagee by a stipulation authorizing him to take possession of the mortgaged chattels at any time he feels insecure is not an arbitrary one, but depends upon some act of the mortgagor, done or threatened, which tends to impair the security.'' Brown v. Hogan, 49 Neb. 746; Nash v. Larson, 80 Minn. 458. The mortgagee can not act arbitrarily but he must act in good faith. Wood v. Gaar, Scott & Co., 93 Mich. 143. We are not referred to a decision in this State upon the question. The law as declared by the Illinois court seems to have the support of reason and is fair and just to all parties.

The plaintiff asked, and the court properly refused, the following instruction: ''If the jury believe from the evidence that Frankel, Frank & Company deemed themselves insecure and directed the plaintiff to take the property in controversy into his possession, then it is the law that he had the right to do so, and your verdict will be for the plaintiff.''

The court gave the following at the request of de-

fendants: "The jury are instructed that the mere fact that the plaintiff, or the beneficiaries in the note and deed of trust shown in evidence, deemed himself, or themselves, insecure, or that he, or they, deemed the payment of the note by defendants as insecure, is not conclusive upon the jury. And it is for the jury to consider all the facts and circumstances shown in evidence and from them to determine whether plaintiff, or said beneficiaries, Frankel, Frank & Company had reasonable grounds for deeming himself, or themselves, insecure, or for deeming the payment of the note by the defendants as insecure; and by 'reasonable grounds' is meant such facts and circumstances as would lead a reasonably prudent man, acting in good faith, to believe himself insecure in the respects above mentioned."

There was evidence tending to show that between the date of the mortgage and suing out the writ of replevin, defendants had sold about one hundred dollars' worth of goods, but had paid nothing upon the note. But there was evidence, too, that it was the understanding between Frankel, Frank & Company's agent that defendants were to live on the proceeds of sales until the fall; that they purchased some goods and put in the store and paid out money for necessary expenses in carrying on the business. And there was further evidence that the goods taken on the writ were of the value of $1,800, double that of the debt. This evidence had a decided bearing upon the question submitted in said instruction given for the defendants, which was a proper declaration of law on the facts.

The court instructed the jury if they found for plaintiff to add interest to the amount so found. This was error. Section 2869, Revised Statutes 1899 reads: "The jury on the trial of any issue or upon any inquisition of damages may, if they shall think fit, give damages in the nature of interest over and above the value of the goods at the time of the conversion or

seizure.'' Under said section it was discretionary whether the jury should, or should not, allow interest. State ex rel. v. Hope, 121 Mo. 34.

The defendants insist that plaintiff's appeal should be dismissed for the reason that his abstract does not show that there was a judgment in the case. As the certificate of the clerk does show that there was a judgment, that is sufficient.

As defendants offer to enter a remittitur of $101.46, the total of the interest allowed by said jury, the cause will be affirmed if said remittitur be entered in ten days. Otherwise, the cause will stand reversed and remanded.

All concur.