**CITIZENS STATE BANK OF NEVADA, Missouri, a corporation, Plaintiff-Respondent,**

v.

**Charles WALES, Defendant-Appellant.**

**No. 9053.**

Springfield Court of Appeals, Missouri.

July 13, 1971.

A. L. Shortridge, Joplin, for defendant-appellant.

Ewing, Ewing, Carter, Wight, Woodfill & Middleton, Robert F. Middleton, Nevada, for plaintiff-respondent.

STONE, Judge.

On June 18, 1968, plaintiff Citizens State Bank of Nevada, Missouri, instituted this replevin suit against defendant Charles Wales in the Circuit Court of Vernon County. Many months and many pleadings later, the Circuit Court of Cedar County (to which the cause had been transferred on change of venue) on July 25, 1970, sustained plaintiff's motion for summary judgment under Rule 74.04 [1] and entered such judgment for plaintiff on its amended petition and on defendant's second amended counterclaim. Defendant appeals.

In its original petition in replevin, plaintiff alleged that "it was the mortgagee in a chattel mortgage dated *June 14, 1967,*[2] executed by [defendant] Charles Wales, which said mortgage has been declared in default and forclosed (sic) on the *15th day of June 1968* and that it was lawfully entitled to the possession of certain goods and chattels to the value of *$91.75,* to-wit: one (1) 1959 Chevrolet ½ ton pickup,

---

1. All statutory references are to RSMo 1969, V.A.M.S., and all references to rules are to the Supreme Court Rules of Civil Procedure, V.A.M.R.

2. The chattel mortgage, on which plaintiff relies, was dated *March 21, 1966,* and was executed to secure payment of installment note #12257 of even date therewith in the principal sum of $1,-022.70.

Serial No. 3A59K118135, and that afterwards *on the same day* defendant wrongfully took said property from the possession of plaintiff and still wrongfully and unlawfully detaines (sic) the same at the county aforesaid, to plaintiff's damage in the sum of *$91.75.*" (All emphasis herein is ours.) The affidavit of William C. Burroughs, plaintiff's vice-president and cashier, in the prescribed form [Rule 99.01; § 533.010] and a replevin bond (in a penal sum not shown in the transcript) approved by the sheriff [Rule 99.03; § 533.030] were attached to and filed with plaintiff's petition. Whereupon, summons in the form promulgated by the Supreme Court [Form No. 1; 5 RSMo 1969, p. 4531] was issued by the circuit clerk; copy thereof and a copy of the petition were served upon defendant personally on the same date, to wit, *June 18, 1968,* as evidenced by the sheriff's return; and, as the parties here agree, on that date a deputy sheriff took defendant's Chevrolet pickup and delivered it to plaintiff.

In its amended petition filed the next day, *June 19, 1968,* plaintiff again averred its status as "the mortgagee in a chattel mortgage dated *June 14, 1967*" the foreclosure of that mortgage on *June 15, 1968,* and plaintiff's entitlement to possession of "certain goods and chattels to the value of *$750,*" to wit, the above-described Chevrolet pickup and numerous other items including gas welding equipment and plumbing tools (all as listed and described in the chattel mortgage), "afterwards *on the same day*" wrongfully taken by defendant from plaintiff's possession and still wrongfully detained to its damage in the sum of *$750.* The amended affidavit of Burroughs in the prescribed form and a replevin bond in the penal sum of $1,500 (whether approved by the sheriff is not disclosed in the transcript) were attached to and filed with plaintiff's amended petition. Whereupon, another summons in the same form [Form No. 1] was issued, and a copy thereof and a copy of the amended petition were served upon defendant personally on the same date, to wit, *June 19, 1968,* as indicated by the sheriff's return.

 In his brief here, defendant asserts that "no *writ of replevin* was 'ever issued or served." Plaintiff counters with the statement that *"plaintiff's petition, or writ of replevin,* was properly filed and served," citing the transcript pages reflecting the petitions, affidavits and bonds, and then inviting us to examine "a photographic copy of [defendant's] original counterclaim which is not a part of this transcript" but is attached to plaintiff's brief as an "exhibit" thereto.[3] The procedure in replevin suits instituted in courts of record is outlined in and governed by Rule 99 [cf. §§ 533.010 to 533.230, incl.]. Rule 99.02 [§ 533.020] captioned *"Order of Delivery* Shall be Made—When—By Whom"[4] provides that, upon the timely filing of a proper affidavit [Rule 99.01; § 533.010], "the court or judge or clerk in vacation shall make an order requiring the defendant to deliver the property specified in the affidavit to the sheriff, and requiring the sheriff, if the same be not delivered to him, to take it from the defendant and deliver it to the plaintiff." Even though an order of delivery might be regarded as

---

3. Of course, this invitation must be respectfully declined, since our system of jurisprudence neither contemplates nor permits appellate determination of what was done in the trial court on the basis of material aliunde the record, such as statements in or "exhibits" attached to a brief, which find no support in the transcript on appeal and are not admitted by opposing counsel. Kansas City v. Mathis, Mo.App., 409 S.W.2d 280, 288(14, 16); Baker v. Missouri National Life Ins. Co.,

Mo.App., 372 S.W.2d 147, 155(11, 12); City of Rolla v. Riden, Mo.App., 349 S.W.2d 255, 257(4); Lubrication Engineers, Inc. v. Parkinson, Mo.App., 341 S.W.2d 876, 879(9).

4. For an appropriate form of such order of delivery, consult 10 Missouri Practice, Procedural Forms by Wheaton and Blackmar, p. 572. See § 533.290 for the form of such order in replevin suits instituted in magistrate courts.

a "writ of replevin," it seems clear that the *petition* in a replevin suit cannot be equated with, substituted for, or fill the office of an *order of delivery*.

A meticulous search of the transcript on appeal discloses neither issuance nor service of an order of delivery [Rule 99.02; § 533.020] or anything filling the office thereof. However, the parties agree that a deputy sheriff did take possession of defendant's Chevrolet pickup and deliver it to plaintiff on *June 18, 1968,* when a "summons" or "replevin" was served on defendant,[5] and opposing counsel have briefed and argued the case here on the substantive question as to whether or not the pleadings, admissions, answers to interrogatories, affidavit of plaintiff's officer Burroughs, and deposition of defendant showed that there was no genuine issue as to any material fact and that plaintiff was entitled to a summary judgment as a matter of law. Rule 74.04(c). In these circumstances, we do not stick and stall in the procedural shell of the case but proceed to probe and perscrutate the substantive kernel within.

■ It appears appropriate at this point to note certain principles and pronouncements relevant on this review. In ruling a motion for summary judgment, it is the duty of the trial court in the first instance, and it becomes our duty on appeal, to scrutinize the record in the light most favorable to the party against whom the motion was filed and the judgment was rendered, and to accord to such party the benefit of every doubt.[6] A summary judgment may be rendered where, but only where, the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue of a material fact and that the movant is entitled to judgment as a matter of law;[7] "'[a] genuine issue of fact exists for the purpose of avoiding a summary judgment whenever there is the slightest doubt as to the facts'" [Maddock v. Lewis, Mo., 386 S.W.2d 406, 409, certiorari denied 381 U.S. 929, 85 S.Ct. 1569, 14 L.Ed.2d 688; Elliott v. Harris, Mo. (banc), 423 S.W.2d 831, 835; Pitman Mfg. Co. v. Centropolis Transfer Co., Mo., 461 S.W.2d 866, 873; Pagan v. City of Kennett, Mo.App., 427 S.W.2d 251, 252(3)]; and the burden rests upon movant, in this instance upon plaintiff, to show by "unassailable proof" [Rule 74.04(h)] that there is no genuine issue of fact [Nelson v. Browning, Mo., 391 S.W.2d 873, 877(1); Clampett, Summary Judgments in Missouri, 22 J.Mo.Bar 14, 17 (1966)] and that movant is entitled to judgment as a matter of law. Brooks v. Cooksey, Mo., 427 S.W.2d 498, 500(2); Norman v. Willis, Mo.App., 402 S.W.2d 46, 47(1). See Cure v. City of Jefferson, Mo., 380 S.W.2d 305, 310(2). Our appellate courts have repeatedly characterized a summary judgment as an extreme and drastic remedy and have warned that great care should be exercised in utilizing the procedure.[8]

5. The reason for or significance of the filing of an amended petition, an amended affidavit and another bond the next day, June 19, 1968, is not disclosed, and there is no indication in the record that any of the other items of personalty described in the chattel mortgage of March 21, 1966, and listed in the amended petition and amended affidavit were taken from defendant.

6. Matthews v. City of St. Ann, Mo., 457 S.W.2d 766, 768; Wood v. James B. Nutter & Co., Mo., 416 S.W.2d 635, 636 (1); Campbell v. Stout, Mo.App., 408 S.W.2d 585, 588(3); Gasen's Drug Stores, Inc. v. Jones Enterprises, Inc., Mo.App., 388 S.W.2d 495, 500(4).

7. Rule 74.04(c); Stanturf v. Sipes, Mo., 447 S.W.2d 558, 560, 35 A.L.R.3d 834; E. O. Dorsch Elec. Co. v. Knickerbocker Const. Co., Mo., 417 S.W.2d 936, 939; Stoffel v. Mayfair-Lennox Hotels, Inc., Mo.App., 387 S.W.2d 188, 190(2).

8. Pitman Mfg. Co. v. Centropolis Transfer Co., Mo., 461 S.W.2d 866, 872(3); Matthews v. City of St. Ann, supra note 6, 457 S.W.2d at 768; Stanturf v. Sipes, supra note 7, 447 S.W.2d at 561(1); Elliott v. Harris, Mo.(banc), 423 S.W.2d 831, 835(6); E. O. Dorsch Elec. Co. v. Plaza Const. Co., Mo., 413 S.W.2d 167, 169(1); Maddock v. Lewis, Mo., 386 S.W.2d 406, 408, certiorari denied

Defendant, a sheet metal worker and independent contractor, had resided on Route 2, Nevada, Missouri, since 1953, and had done business with plaintiff bank since he borrowed $2,000 there in 1960. From time to time thereafter, defendant executed other notes in payment and renewal of the then unpaid balances on the original loan. The last of those notes, #12257 dated March 21, 1966, was in the principal sum of $1,022.70, payable in monthly installments of $48.70, and secured by a chattel mortgage of even date therewith covering defendant's 1959 Chevrolet pickup and numerous other items of personalty. The principal sum of $1,022.70 was the total of three items, to wit, (a) "a rewrite of a previous note with a [then] outstanding balance of $890," (b) "$96.90 [prepaid] interest" or unearned discount, and (c) "$35.80 credit life" insurance premium.

When defendant found it difficult to make the monthly payments required by note #12257, plaintiff prepared and defendant executed extension agreement #14553 dated June 14, 1967, in the principal sum of $366.75 payable in monthly installments of $25 on the fifteenth day of each succeeding calendar month. That principal sum was the total of three items, to wit, (a) the then "principal balance" of $329 on note #12257, (b) "$33.17 [prepaid] interest" or unearned discount, and (c) "$4.58 credit life" insurance premium. The extension agreement was similar in form and language to that of a promissory note but provided that it was "not in payment, but for the purpose of extending the time of payment" of note #12257 dated March 21, 1966, and that the chattel mortgage of even date therewith securing payment of that note "shall continue in full force and effect . . . ."

A chain of interrelated events during July 1967 (hereinafter referred to as *the garnishment-overdraft matter*) generated smoldering friction and feeling which cul-

minated in eruption of this litigation some eleven months later. In a "rent suit" in the Magistrate Court of Vernon County, Missouri, in which one G. M. Ratts had obtained a judgment against defendant, summons to garnishee "to satisfy the sum of $295.51 with interest and cost thereon" was issued and served on plaintiff on July 19, 1967; and, *on the same day,* plaintiff paid to the Sheriff of Vernon County "the sum of $275.52 from [defendant's] account," presumably the entire balance therein.

In his affidavit supporting plaintiff's motion for summary judgment, plaintiff's officer Burroughs averred that "on or about the 19th day of July, 1967, [plaintiff] sent a notice of debit memo" to defendant informing him "of the payment of a garnishment" to the sheriff "in the amount of $275.52"; that "on or about the 20th day of July, 1967, [plaintiff] received in the ordinary course of banking trade, three checks [in the aggregate sum of $98.39] drawn by [defendant] and presented for payment"; that "on or about" the same date, defendant "requested of [Burroughs] that [plaintiff] honor the three checks" and "stated that he would come into the bank and . . . cover the overdrafts"; and that on July 21, 1967, plaintiff honored and paid the three checks and mailed to defendant notice of overdraft in the sum of $98.39.

Defendant's version of the matter, as gathered from his deposition taken by plaintiff's counsel, was substantially different. Denying that anyone in plaintiff bank had talked with him about whether or not the three checks presented on July 20, 1967, should be paid, defendant insisted that he neither asked nor authorized plaintiff to pay those checks and that he first heard of the overdraft when he "received a letter through the mail" three days later. Then desiring "to find out why I was overdrawn," defendant went to plaintiff bank, talked with officer Burroughs, and told

381 U.S. 929, 85 S.Ct. 1569, 14 L.Ed.2d 688; Anderson v. Steurer, Mo., 391 S.W. 2d 839, 842; Cooper v. Finke, Mo., 376 S.W.2d 225, 229(3).

him "that I didn't think [plaintiff] should have paid the $275" on the "garnishment" served by the sheriff on July 19, 1967, and "that I was going to look into it"—"that I would see about it." A week or two later, defendant told plaintiff's employee Miller "I didn't think that [plaintiff] should have let the money go out."[9]

As shown by the loan ledger sheet reflecting payments on extension agreement #14553, defendant made the required payment of $25 for and during each of the eleven months from July 1967 through May 1968, the unpaid balance after crediting the last of those payments being $91.75.[10] In the meantime, to wit, on *September 19, 1967,* plaintiff's employee Miller had written on the loan ledger sheet *"Do not release anything until overdraft is paid."* The June 1968 payment fell due on *Saturday, the 15th.*[11] On *Monday, June 17, 1968,* the handwritten notation *"Do not accept payments"* was placed on the face of the loan ledger sheet. When defendant went into plaintiff bank on *Tuesday, June 18, 1968,* plaintiff's officer Burroughs "told me that he didn't want the payment, he wanted the truck, and that's what we talked about." Considerable conversation about the garnishment-overdraft matter ensued. Defendant finally stated that he would clear the overdraft of $98.39 at the rate of $25 per month "after the truck was paid off," i. e., after the balance of $91.75 on extension agreement #14553 had been paid. The response of plaintiff's officer Burroughs (as set forth in his answers to interrogatories) was "O. K., let's rewrite the note, keep the same terms and the pay-

ments at $25 a month and keep the directors happy." But when Burroughs prepared another extension agreement, defendant refused to sign it because (so he said in his deposition) "I had told him I didn't sign any papers for the money to go out and I wasn't signing any for it to come back in; that my word should be good enough under those circumstances"—"I wanted to keep the truck clear; I didn't want to tie it up for an extra four months."

In his answers to interrogatories, Burroughs stated he then told defendant, "we are going to pick up the items covered by the chattel mortgage and remove the note and overdraft from our records." However, the sequence of subsequent events as detailed some thirteen months later in Burroughs' affidavit supporting plaintiff's motion for summary judgment was (1) "a request for an explanation . . . as to [defendant's] purpose" in having procured the issuance on May 29, 1968, of a duplicate certificate of title to the mortgaged 1959 Chevrolet pickup, which however had been mailed to plaintiff, named thereon as lienholder, (2) defendant's reply that "it was none of the bank's business,"[12] and (3) "a formal demand . . . upon [defendant] for the balance in full of $91.75, owing and due on note [extension agreement] #14553." Burroughs' supporting affidavit then closed with averments that on June 18, 1968, defendant "did not at any time offer, tender or give the sum of $91.75 to any employee or agent" of plaintiff, and that on the same date plaintiff "deemed itself insecure by the terms and conditions of the chattel

9. Actually, defendant's primary complaint seems to have been that he allegedly was not apprised of the property exempt under §§ 513.440 and 513.445 and of his right to hold the same exempt from execution. Rule 76.08; § 513.445; Nephler v. Rowland, 195 Mo.App. 386, 191 S.W. 1033; Rolla State Bank v. Borgfeld, 93 Mo.App. 62.

10. According to the loan ledger sheet, five of those payments were made on their due dates, i. e., on the 15th day of the respective months in which they were payable, no payment was made later than

the 18th day of the month in which it was due, and the last payment was made on May 16, 1968. Defendant deposed that no complaint was voiced about "the late [monthly] payments."

11. The record does not indicate whether or not plaintiff bank was open for business on Saturdays.

12. Defendant's explanation in his deposition was that, having been divorced from his wife in March 1968, he thus sought (albeit unsuccessfully) "to get [her] name taken off" the certificate of title.

mortgage . . . and by action instituted replevin proceedings." [13]

Opposing counsel agree that, as plaintiff's attorney phrased it in oral argument, "tender is a controlling issue is this case" —"a common controlling issue" in both plaintiff's cause of action and that averred in defendant's second amended counterclaim. Bearing upon this issue, we have before us:

(a) The above-quoted blunt, unelaborated asseveration of plaintiff's officer Burroughs in his supporting affidavit that defendant "did not at any time offer, tender or give the sum of *$91.75* to any employee or agent" of plaintiff.

(b) The following depositional testimony of defendant. "Q. Did you tender *$91* to [plaintiff] on that day [June 18, 1968]?

A. I did. Q. In cash? A. Yes. Q.

To whom? A. Bill Burroughs." Two like affirmations that he had tendered $91 in cash to Burroughs are found in defendant's deposition. Other relevant questions and answers were: "*Q. Did you offer to make the [$25 monthly] payment or pay the note off, which? A. Both.* Q. Did you tender that amount [$91] to pay the note off? A. Yes . . . . Q. Why was [the 1959 Chevrolet pickup] wrongfully taken from you? *A. Because I offered to make payment. Q. Payment that was due? A. Yes. . . . . Q. Or the total amount of the note? A. Both. I offered to make the total amount just before I left the bank.* Q. You handed him cash of $91? A. I didn't hand it to him, I offered and had my billfold in my hand

. . . . Q. And you got up with billfold in hand and you pulled out $91? A. I didn't pull it out. I had it. I had the $25 in my hand. Q. You never had the $91 in your hand? A. No." When asked at one point "how much you still owed on your note [extension agreement #14553]" on June 18, 1968, defendant responded *"$91."* To a similar question at another point, he answered *"$91 and some cents."*

(c) The hereinbefore-noted evidence that on September 19, 1967, plaintiff's employee Miller had written on the loan ledger sheet for extension agreement #14553 *"Do not release anything until overdraft is paid"*; that on *June 17, 1968,* the notation *"Do not accept payments"* had been placed on the face of the loan ledger sheet; that, when defendant talked with plaintiff's officer Burroughs on *June 18, 1968* "he told [defendant] that he didn't want the payment, he wanted the truck, and that's what we talked about"; and that, upon defendant's refusal (during that conversation) to sign another extension agreement including the overdraft of $98.39, Burroughs (as recorded in his answers to defendant's interrogatories) told defendant, "we are going to pick up the items covered by the chattel mortgage and remove the note and overdraft from our records."

The trial court filed a memorandum opinion, the gist and essence of which were that no genuine issue as to tender was presented on the record. In urging the validity and soundness of that holding, *plaintiff's counsel* here digest the significant findings in the memorandum opinion as having been "that [defendant] made a tender of no more than $25" and "that the

---

13. Plaintiff here states that, in deeming itself insecure, it relied on (a), defendant's alleged default in payment on extension agreement #14553, (b) the overdraft of $98.39 created by payment of the three checks on July 21, 1967, (c) two judgments for unpaid sales tax allegedly entered against defendant, of which Burroughs averred that he had "acquired knowledge on the 18th day of June, 1968," and (d) defendant's then refusal to explain his application for a duplicate certificate of title. For the purposes of this opinion, we assume that, in so determining itself insecure, plaintiff acted in good faith and upon probable cause, i. e., that the circumstances were such that a reasonable person thus situated might in good faith have believed himself unsafe and insecure. Feller v. McKillip, 109 Mo.App. 61, 81 S.W. 641(2); annotation 125 A.L.R. 313, 318–322.

amount due was *more than $91*"; and, at another point in their brief, counsel offer their similar appraisal of the record, i. e., "that the only real conflict is whether or not $25 was ever tendered by [defendant]" and that "there is no conflict but that the total amount due was not tendered," citing in support of the latter statement (a) the hereinbefore-quoted averment in Burroughs' affidavit that defendant did not "offer, tender or give the sum of *$91.75*" to any of plaintiff's employees and (b) defendant's depositional testimony pertaining to his alleged offer to pay *$91*. On the other hand, *defendant's counsel* assert (1) that tender had been waived but (2) that defendant nevertheless did make a valid and sufficient tender.

■■ In presenting his plea of waiver, defendant invokes and relies on the established principle that tender becomes unnecessary and is waived where the party to whom it otherwise should be made theretofore has stated, or has taken a position clearly showing, that a tender would be refused and thus would be nothing more than a vain and idle ceremony.[14] In our opinion, the record before us, more particularly the evidence noted in paragraph (c), supra, does afford substantial basis for application of the stated principle and, viewed in the light most favorable to defendant with the benefit of every doubt accorded to him [see again cases cited marginally in note 6, supra], forecloses a judicial determination as a matter of law that there is no genuine issue as to whether or not tender was waived. However, we need not and do not rest our holding on that basis alone for, in our view of the matter, defendant's depositional testimony raised and presented a genuine issue of material fact as to whether he nevertheless made a

valid and sufficient tender to plaintiff's officer Burroughs on June 18, 1968.

In view of the transcendent significance apparently accorded by both the trial court and plaintiff's counsel to the relatively minuscule difference between *$91.75*, the unpaid balance on extension agreement #14553, and *$91*, the round sum to which both plaintiff's examining counsel and defendant made frequent reference in defendant's deposition, it may not be amiss to observe at this point that the record inferentially indicates that payment by defendant on June 18, 1968, of *a lump sum somewhat less than $91* should have been sufficient to have discharged his then indebtedness on the extension agreement. This, for the reason that, as hereinbefore recorded, the principal sum of $366.75 for which that extension agreement was taken on June 14, 1967, included not only the then "principal balance" of $329 on note #12257 but also *$33.17 prepaid interest or unearned discount* and *$4.58 credit life insurance premium,* both of which latter sums were computed on the assumption that the extension agreement would be paid according to its terms in fifteen monthly installments of $25 each and a sixteenth monthly installment of $16.75 on *October 15, 1968*. Hence, a portion of the $33.17 prepaid interest or unearned discount and $4.58 credit life insurance premium included in the principal sum of $366.75 would have remained unearned if the then unpaid balance had been paid in full on *June 18, 1968*. Without essaying precise computation of the relatively minor portion of such prepaid interest and credit life insurance premium which remained unearned as of June 18, 1968, suffice it to say that it undoubtedly was in excess of 75¢.[15]

14. Miran Investment Co. v. Medical West Building Corp., Mo., 414 S.W.2d 297, 303–304(14) ; Leesburg State Bank & Trust Co. v. Merchants Bank of Kansas City, Mo.App., 142 S.W.2d 94, 97(10) ; Smith v. Means, 170 Mo.App. 158, 171, 155 S.W. 454, 457(3) ; Cunningham v. Wabash R. Co., 167 Mo.App. 273, 285, 149 S.W. 1151, 1154(7) ; Kingsland & Ferguson Mfg. Co. v. St. Louis Malleable Iron Co., 29 Mo.App. 526, 538(3) ; 86 C.J.S. Tender § 5, pp. 559–560.

15. When earlier installment notes executed by defendant were "rewritten" prior to their payment in full according to the

Passing that aspect of the factual situation, we are cognizant and mindful not only of the several references to the round sum of $91 in defendant's deposition but also of other significant portions thereof heretofore noted in paragraph (b), to wit, (1) when asked "how much [he] still owed" on extension agreement #14553 on June 18, 1968, defendant asnwered at one point "*$91*" and at another "*$91 and some cents,*" and (2) when plaintiff's counsel twice inquired whether on June 18, 1968, defendant had offered to make the $25 monthly payment due on June 15, 1968, *or to "pay the note off"—"the total amount of the note,"* in each instance defendant's response was "*both,*" supplemented in the second answer by the further statement, "*I offered to make [pay] the total amount just before I left the bank.*" Hence, we are of the opinion that the depositional testimony of defendant, when considered as a whole as it should be [Dimond v. Terminal R. R. Ass'n. of St. Louis, 346 Mo. 333, 353, 141 S.W.2d 789, 799(12); City of Ash Grove v. Davis, Mo.App., 418 S.W.2d 194, 202(8); Garrard v. State Dept. of Public Health & Welfare, Mo.App., 375 S.W.2d 582, 592(25)], would have permitted a finding that, in his conversation with Burroughs on June 18, 1968, defendant had offered to pay or tendered the entire unpaid balance of extension agreement #14553, whether that was "$91" or "$91 and some cents" or $91.75.

■ In City of St. Louis v. Senter Commission Co., 343 Mo. 1075, 124 S.W.2d 1180, the only case cited in the trial court's memorandum opinion, the basic and determinative holding was that, in a condemnation proceeding, the city's payment into court of the principal amount of the award to condemnee as confirmed in the judgment of the circuit court did not stop the running of interest thereon, since such deposit in court was made "as the full amount to be paid to defendant [condemnee]" and payment or tender thereof, *sans interest to that date,* did not satisfy the judgment. 343 Mo. at 1082, 124 S.W.2d at 1184(5, 6). The same case is the sole authority cited in plaintiff's brief here for the broad generalization (with which we need not quarrel) that "tender must be clear, unequivocal, and of the full amount." 343 Mo. at 1082, 124 S.W.2d at 1184(7). But every opinion must be read in the light of the facts in that particular case [State on Inf. of Dalton v. Miles Laboratories, 365 Mo. (banc) 350, 364, 282 S.W.2d 564, 573(12), and cases there cited] and, so considered, City of St. Louis v. Senter Commission Co., supra, neither compels nor supports the end result for which instant plaintiff contends. More apropos here are the comments and holding in Capital City Motors, Inc. v. Thomas W. Garland, Inc., Mo., 363 S.W.2d 575, 579(5, 6), in rejecting a contention resting on a 44¢ tender insufficiency: "Respondent's contention is without merit. The law does not concern itself with trifles. Matzger v. Page, [62 Wash. 170, 113 P. 254, 255]; 86 C.J.S. Tender § 8a, p. 563. Furthermore, respondent waived the 44¢. An objection to a tender, to be available to a creditor, must be timely made, and the grounds of the objection specified, otherwise it is waived. 86 C.J.S. Tender § 12, p. 565."

terms thereof, plaintiff rebated in each instance the unearned portion of the prepaid interest and credit life insurance premium, which had been included in the principal sum of the "rewritten" note. E. g., when note #12257 dated March 21, 1966, was executed by defendant as a "rewrite" of a previous note, plaintiff *rebated* or *deducted* $33.99 as the unearned portion of the prepaid interest and $12.66 as the unearned portion of the credit life insurance premium which had been included in the principal sum of the "rewritten" note. Likewise, when extension agreement #14553 dated June 14, 1967, was executed by defendant as a "rewrite" of note #12257, plaintiff *rebated* or *deducted* $8.62 as the unearned portion of the prepaid interest and $3.28 as the unearned portion of the credit life insurance premium which had been included in the principal sum of the "rewritten" note.

We have not overlooked plaintiff's further insistence that no more than $25 was tendered because defendant had only $25 out of his billfold and "in [his] hand." By reference to defendant's depositional testimony relevant to this matter as recorded in the last three questions and answers in the series hereinbefore quoted in paragraph (b), it will be observed that plaintiff's counsel did not inquire, and defendant did not specifically state, whether the remainder of the round sum of $91 to which counsel there referred was in his billfold at that time. However, in view of the "question" propounded by counsel, "and you got up *with billfold in hand* and you pulled out $91," and defendant's answer, "*I didn't pull it out; I had it*," we are unwilling, more particularly in view of the nature of this review, to ignore the possible inference that the remainder of the sum needed to "pay the note off," whether "$91" or "$91 and some cents" or $91.75, then was ensconced in defendant's billfold in his hand and was immediately available for manual transfer to Burroughs, if he had accepted the offer of which defendant testified, i. e., to "pay the note off"—"the total amount of the note."

Addressing ourselves on this review solely to the propriety of the entry of summary judgment on plaintiff's motion [Rule 74.04], appropriate regard for the governing principles of appellate review in this category of cases impels, so we believe, the conclusion that the summary judgment for plaintiff must be set aside and the cause must be remanded to the Circuit Court of Cedar County for further proceedings on plaintiff's amended petition and defendant's second amended counterclaim not inconsistent with this opinion. It is so ordered.

TITUS, P. J. and HOGAN, J., concur.