Floyd T. STANTURF, Appellant,

v.

Donald SIPES, Administrator, Wright Memorial Hospital, et al., Respondents.

No. 52891.

Supreme Court of Missouri,
Division No. 2.

Dec. 8, 1969.

John G. Crighton, North Kansas City, for plaintiff-appellant.

J. D. James, David R. Odegard, James, McCanse & Larison, Kansas City, for defendants-respondents.

STOCKARD, Commissioner.

By his fourth amended petition plaintiff sought compensatory and punitive damages in an amount exceeding $400,000. The trial court entered summary judgment for defendants and plaintiff has appealed.

We shall set forth a brief statement of the events and circumstances giving rise to plaintiff's claim for damages which we have determined from a consideration of the allegations of the petition, and from

various depositions and exhibits before the trial court. After visiting with his children in Trenton, Missouri, on February 26, 1962, plaintiff started to drive back to Mercer, Missouri, a distance of approximately thirty miles. The temperature was in the neighborhood of zero degrees. When plaintiff had traveled about two miles he developed a "terrible headache" and "started blacking out." He stated in his deposition that he had been taking some medicine and that this may have been the cause of his condition. He stopped his automobile, but apparently left the lights on. During the night he regained consciousness but could not start his automobile because the battery had run down. He remained in the automobile until the next morning when he obtained transportation on a school bus to Trenton, and he went to the home of his eldest daughter. She called Dr. Oliver Duffy who determined that plaintiff's feet had been frozen. He administered some treatment and told plaintiff that he would "have to have medical treatment," and that he would try to get him admitted to the Wright Memorial Hospital located at Trenton. The next morning Dr. Duffy returned and told plaintiff that he could not get him admitted to the hospital unless plaintiff paid in advance a $25 admittance fee which plaintiff did not have.

In the depositions there is some indefiniteness as to what was thereafter said and what subsequently occurred. However, plaintiff stated in his deposition that his son-in-law went to see Mr. Donald Sipes, the administrator of the hospital, and offered to pay the $25 but that admission to the hospital was still refused. Plaintiff's daughter got in touch with the sheriff of the county who in turn called Mr. Sipes. Mr. Sipes admitted that the sheriff called him, and he also stated that Mr. A. L. Palmer, a local minister, called on him in behalf of plaintiff, and that Mr. Palmer stated "that the church had an emergency fund from which it was possible they could take $25," but according to Mr. Sipes, it

was "not in the form of an offer." However, Mr. Sipes admitted that he understood that Mr. Palmer would pay the $25 if that would "help the situation." Mr. Sipes also testified that when Dr. Duffy called him he asked if plaintiff would be eligible as a charity patient, and he stated to Mr. Sipes "that it would be an amputation." It also appears that an appeal to Mr. Sipes on behalf of plaintiff was made by some unidentified lady and by the mayor of Trenton. During cross-examination Mr. Sipes testified, in effect, that when a patient paid the $25 admission fee he was accepted without question and it would be assumed he "would be a paying patient," and he would later be billed, but that the hospital did experience some "bad debts."

Mr. Sipes further testified on deposition that he "took the request [of Dr. Duffy for the admission of plaintiff to the hospital] to the Board of Trustees" of the hospital, and they told him that plaintiff was "not eligible," but it appears that he contacted only one member of that board, Mr. W. W. Alexander, Sr., the chairman. This determination of ineligibility apparently was based on the terms of a charitable trust, referred to subsequently, and as stated by Mr. Sipes, "If the person does not live in the county [Grundy], they [sic] are not eligible for charity." It is not clear if the position of Mr. Sipes and Mr. Alexander was that the hospital was prohibited from accepting charity patients from outside of Grundy County, or if the hospital refused to do so as a matter of policy. We note, however, that plaintiff alleges that he was a resident of Grundy County.

Plaintiff was not admitted to the Wright Memorial Hospital. In the meantime, apparently through the efforts of Dr. Duffy, other arrangements for medical care were being sought. Applications to the University of Iowa Hospital and to another hospital referred to in the deposition as "Broadlawns" were not successful. One or both of these hospitals apparently declined to accept plaintiff on the basis that he was not a resident of Iowa. A request for ad-

mission to the University of Missouri Hospital was unsuccessful, and Dr. Duffy reported to plaintiff that the reason was that the hospital could not "handle" him. Through the efforts of Mr. Palmer, and possibly others, on March 4, admission of plaintiff was obtained to the University of Kansas Medical Center, although there apparently was no contention that plaintiff was a resident of Kansas. After therapy treatments at the medical center proved to be unsuccessful, both of plaintiff's feet were amputated.

Wright Memorial Hospital is the only hospital in the immediate area. It is operated by the Trenton Trust Company pursuant to an "Irrevocable Trust Areement" executed in 1932 by Dr. J. B. Wright. By that trust agreement Dr. Wright conveyed the title of property known as the Wright Hospital to the Trenton Trust Company as trustee, and it was therein provided that the property should constitute a trust "to be applied to the maintenance of a hospital and training school for nurses to be used for the gratuitous treatment of medical and surgical diseases of the sick poor, as herein provided, or for such other charitable purposes as herein set forth." In the provision pertaining to the appointment of a general staff for the management of the hospital, it was provided that "the expenses incident to the operation of the hospital shall be minimized as far as possible without imparing the efficiency and effectiveness of the said Hospital to the end that as many free patients as possible may be served and as much good as possible be accomplished by said Hospital." The General Staff was to have full and complete charge of the affairs of the hospital, but the "purpose of this Trust" was declared to be "to give free hospital, surgical, and medical care to as many poor sick of the City of Trenton, Missouri, or of Grundy County, Missouri, as possible." The Trenton Trust Company receives fees as trustee "in the neighborhood of $500 a month." At the time plaintiff sought admission to the hospital, Mr. W. W. Alexander, Sr., was chairman of the General Staff of the hospital and also chairman of the board of directors of the Trenton Trust Company.

Prior to the incident giving rise to plaintiff's claim, Wright Memorial Hospital applied for federal funds under what is known as the Hill-Burton Act. Federal funds in the amount of $70,000 were eventually paid, but it is not certain from the record that they were paid prior to February 26, 1962. Subsequently, additional federal funds were made available to the hospital under the Hill-Burton Act. The applications for these funds were processed through a state agency, and in connection with the applications the state agency certified that Wright Memorial Hospital was a voluntary nonprofit institution, and that it had "given assurance that a reasonable volume of free patient care will be provided in the proposed facility." Its service area was stated to be Grundy and Mercer Counties. A detailed statement of the provisions of the applications, and the allowance of the Hill-Burton funds can be found in Stanturf v. Sipes, D.C., 224 F.Supp. 883.

The theory upon which the trial court sustained defendant's motion is not disclosed by the record. The language of the motion was that "there is no genuine issue of material fact, and defendants are entitled to judgment as a matter of law." The order of the trial court was only that the motion was "sustained and judgment for defendants entered thereon."

Summary judgment is authorized where, but only where, the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." Civil Rule 74.-04(c), V.A.M.R. In addition to the above, it is further provided that "In no case shall a summary judgment be rendered on issue triable by jury or the court without a jury unless the prevailing party is shown by unassailable proof to be entitled thereto as a matter of law." Civil Rule 74.04(h), V.A.

M.R. "As its name indicates, a summary judgment is an extreme and drastic remedy and great care should be exercised in utilizing the procedure." Cooper v. Finke, Mo., 376 S.W.2d 225, 229. The appellate court, as well as the trial court, must view the record on summary judgment in the light most favorable to the party against whom the judgment is rendered. Anderson v. Steurer, Mo., 391 S.W.2d 839, 842.

Defendants contend that (1) Wright Memorial Hospital is a private hospital and as such it owes no duty to admit anyone it does not want and may refuse admission without assigning a reason therefor; (2) the receipt of public funds under the Hill-Burton Act did not alter its status as a private hospital or create a duty to admit plaintiff; (3) plaintiff has no cause of action against defendants for a breach by the Wright Memorial Hospital of a contract between it and the federal government; and (4) the hospital is not liable for its torts under the "Missouri doctrine of charitable immunity."

Numerous cases are cited by defendants in support of the above propositions. However, this case has reached us on the issue of the correctness of a summary judgment for defendants, and as previously noted, summary judgment should not be rendered unless the prevailing party is shown "by unassailable proof to be entitled thereto as a matter of law." When applied to the facts of this case, this rule means that summary judgment may not be entered for defendants if there be any theory within the scope of the pleadings, or within the broad scope of probable evidence (authorizing an amendment to the pleadings to conform to the proof) as revealed by the "depositions, and admissions on file, together with the affidavits, if any," (Civil Rule 74.04(c)) which if believed by a jury or the trier of facts would authorize a recovery by plaintiff. Compare Cooper v. Finke, supra.

For the purpose of ruling the issue before us, we shall accept as a fact, but we do *not* rule, that Wright Memorial Hospital is a private hospital, and that subject to the circumstances hereafter noted, it owes no duty to admit anyone it does not want and may refuse admission without assigning a reason therefor, and that neither the acceptance of Hill-Burton funds nor the terms of the Trust agreement imposed a duty on the hospital to admit plaintiff under the attending circumstances, even if plaintiff was in fact a resident of Grundy County, as he alleged. However, the deposition of Mr. Sipes clearly would authorize a finding that Wright Memorial Hospital maintained an emergency hospital service, and the depositions of plaintiff and of Mr. Sipes clearly would authorize a finding that plaintiff's condition created an emergency, and that that condition was known to Mr. Sipes by reason of the communication to him from Dr. Duffy. In addition, the depositions clearly would authorize findings that it was the established policy, regularly carried out, to admit any person seeking admission upon the payment of the $25 admission fee, even if there was reason to believe that the patient could not thereafter meet the cost of hospitalization, and that the admission fee of $25 was tendered in this case. Whether the evidence at trial would authorize findings of these facts is not a matter with which we are now concerned.

Restatement of the Law of Torts 2d, § 323, announces a principle of tort liability as follows:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking."

In Wilmington General Hospital v. Manlove, 4 Storey 15, 54 Del. 15, 174 A.2d 135, this principle was applied in a factual situation which in some respects was remarkably similar to this case. There a "private hospital" which had received public funds maintained an emergency ward although it admittedly was under no legal obligation to the public to do so. The parents of an infant took their child to the reception room of the emergency ward where treatment was refused. The child was taken home by its parents and it died shortly thereafter. The hospital defended a suit by the parents on the ground that a private hospital owes the public no duty to accept any patient not desired by it, and it is not necessary to assign any reason for its refusal to accept a patient for hospital service. The Delaware Court recognized that this was the general rule, citing 41 C.J.S. Hospitals § 8; 26 Am.Jr., Hospitals and Asylums, § 10 (40 Am.Jur.2d § 12).; Birmingham Baptist Hospital v. Crews, 229 Ala. 398, 157 So. 224; McDonald v. Massachusetts General Hospital, 120 Mass. 432, 21 Am.Rep. 529; Levin v. Sinai Hospital, 186 Md. 174, 46 A.2d 298; and Van Campen v. Olean General Hospital, 210 App.Div. 204, 205 N.Y.S. 554, affirmed 239 N.Y. 615, 147 N.E. 219. The court then stated:

"But the maintenance of such a ward to render first-aid to injured persons has become a well-established adjunct to the main business of a hospital. If a person, seriously hurt, applies for such aid at an emergency ward, relying on the established custom to render it, is it still the right of the hospital to turn him away without reason? In such a case, it seems to us, such a refusal might well result in worsening the condition of the injured person, because of the time lost in a useless attempt to obtain medical aid.

"Such a set of circumstances is analogous to the case of the negligent termination of gratuitous services, which creates a tort liability. Restatement, Law of Torts, 'Negligence,' § 323."

In this case the pleadings, depositions, and admissions would authorize findings that Wright Memorial Hospital was the only hospital in the immediate area, it maintained an emergency service, and through his agent and representative, Dr. Duffy, plaintiff applied for emergency treatment and was refused. In addition, it could also be found that it was the long established rule of the hospital to accept all persons for treatment upon the payment of a $25 admittance fee, that the fee was offered, but admission was refused. We consider that the practice of admission upon the payment of a $25 fee (even in those cases where it is known that $25 will not cover the entire cost) is comparable to the admission for emergency treatment on a gratuity basis. In either case, the members of the public, and particularly plaintiff's agent, Dr. Duffy, had reason to rely on the practice, and in this case it could be found that plaintiff's condition was caused to be worsened by the delay resulting from the futile efforts of Dr. Duffy, to obtain treatment from the Wright Memorial Hospital.

We are not holding by this opinion that the factual situation of this case brings it within the rule announced in Wilmington General Hospital v. Manlove, supra. What we are holding, but only this, is that whether the rule should be held to be applicable cannot be determined on the meager record before us, and that the record does not now demonstrate "by unassailable proof" that plaintiff is not entitled to recover "as a matter of law." Such issues can, and should, be determined only after a development of all the evidence and facts in a trial.

Defendants also contend that this action cannot be maintained against any of them because of the "Missouri doctrine of charitable immunity." This doctrine was abolished prospectively as of November 10, 1969, by Abernathy v. Sisters of St. Mary's d/b/a St. Mary's Hospital, Mo., 446 S.W.2d 599. However, from the record before us we cannot determine, as a matter of law,

that the doctrine as it existed prior to November 10, 1969, would exempt Wright Memorial Hospital and the individual defendants from liability on plaintiff's claim.

The judgment is reversed and the cause remanded.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.