Kenneth A. JONES and Dorothea M.
Jones, Plaintiffs–Appellants,

v.

Warren AMES and Roy Holley,
Defendants–Respondents.

No. 65965.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 18, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 31, 1995.

Application to Transfer Denied
July 25, 1995.

David G. Ott, Dean R. Gallego, Clayton, for plaintiffs-appellants.

Barbara W. Wallace, David A. Feltz, St. Louis, for defendants-respondents.

DOWD, Judge.

Kenneth A. Jones, et al. (Jones), Plaintiffs, appeal from the trial court's grant of a directed verdict in favor of Roy Holley, Defendant. We affirm.

Jones was in the process of constructing a 24–family apartment building on a tract of land he owned in Jefferson County, Missouri. On November 23, 1985, the partially completed structure was destroyed by a fire which was started in a 55–gallon barrel inside the building. Jones brought a negligence action against Holley and Warren Ames, two of the subcontractors working on the building. At the close of all evidence, Holley filed a motion for a directed verdict, which was granted.[1]

Viewed in the light most favorable to Jones, the evidence adduced at trial was as follows: Jones hired Holley to do the foundation, flat work, excavating, plumbing, roofing, and carpentry work on the building. Jones subcontracted the drywalling work to Leman Middleton, who in turn subcontracted the drywall hanging to Warren Ames. Jones provided all of the subcontractors with their supplies, but each subcontractor provided his own workers. Because Holley was the only contractor whose work extended through the entire project, he was in charge of scheduling when the other subcontractors would perform their work. He was also in charge of the overall clean up of the construction site. However, Holley was not expected to provide heat for the other subcontractors.

Ames and his workers were to hang the drywall on November 23. On November 22 Ames and Middleton went to the job site to look things over. They saw a 55–gallon barrel inside the building with smoke coming out of it. They asked John Webb, Holley's foreman, if they were supposed to use the 55–gallon barrels to provide heat. Webb said, "yes, I guess so we been using it for three weeks."

When Ames arrived at the site the next morning he saw no other heat source, so he directed a member of his crew to start a fire in a 55–gallon barrel located four feet beneath a stairwell of exposed wood on the first floor. Ames and his crew left the fire unattended and went up to the third floor to start their work. Ames checked on the fire three times during the first hour and a half he worked. About ten minutes after Ames checked on the fire for the third time, he heard a crackling sound and then saw flames coming up to the third floor through the stairwell. He and his crew were able to escape from the burning building by climbing through a window and descending a brick mason's scaffolding.

Fire Marshall Russell Millan was the first fireman to arrive on the scene. He found the fire which destroyed the building was caused by a careless drywall worker who started a fire in a 55–gallon barrel inside the building.

During his testimony, Holley admitted he burned the trash left on the job site in 55–gallon barrels. He also stated he and his workers had previously started fires in the barrels outside the building in order to warm their hands. However, he stated he had a

---

1. The suit against Ames was submitted to the jury which returned a verdict in Jones' favor.

policy against burning in the barrels inside the building, and he had fired two men who started a fire in a barrel in the garage of a house.

Bill Buxton, an expert on fire safety, was hired to investigate the fire. He stated both Holley and Ames violated the standard of care required to be exercised at a construction site because they both allowed burning on the job site and the fire safety codes prohibited all fires on construction site premises. The 1978 version of the BOCA National Building Code, which was the Jefferson County building code at the time of the fire, also prohibited burning on construction sites. Section 1318.9 of this code states:

> Housekeeping: Rubbish and trash shall not be allowed to accumulate on the site and shall be removed as fast as conditions warrant; *combustible rubbish shall be removed daily, and shall not be disposed of by burning on the premises or in the immediate vicinity*, and the entire premises and area adjoining and around the operation shall be kept in a safe and sanitary condition and free of accumulation of trash, rubbish, nuts, bolts, small tools and other equipment.

However, Buxton stated the fires Holley burned on the premises had nothing to do with the fire which destroyed the building.

During a hearing on Holley's motion for a directed verdict, the trial court found as a matter of law that Holley was not the general contractor of the building project. The trial court then granted Holley's motion for a directed verdict. Jones now appeals.

In his sole point on appeal, Jones alleges the trial court erred in directing a verdict in favor of Holley because the evidence, viewed in the light most favorable to Jones, was sufficient to make a submissible case against Holley for negligence.

■ In reviewing a grant of a directed verdict in favor of a defendant, we view the evidence and permissible inferences in the light most favorable to the plaintiff, disregard contrary evidence and inferences, and determine whether, on the evidence so viewed, the plaintiff made a submissible case. *Heacox v. Robbins Educational Tours, Inc.,*

829 S.W.2d 600, 601[1] (Mo.App.1992). The claim should not be submitted to the jury unless each and every fact essential to liability is predicated upon legal and substantial evidence. *Koszor v. Ferguson Reorganized S.D. R–2,* 849 S.W.2d 205, 207[2] (Mo.App. 1993).

■ The elements of a cause of action for negligence are: (1) the existence of a duty on the part of the defendant to protect the plaintiff from injury, (2) breach of that duty, and (3) an injury to plaintiff which was proximately caused by the defendant's breach. *Strickland v. Taco Bell Corp.,* 849 S.W.2d 127, 131[3] (Mo.App.1993).

■ First, Jones argues Holley had a duty not to expose his property to an unreasonable risk of fire. Jones alleges this duty arose out of Holley's contractual agreement to clean up the entire construction site, his duty to supervise his employees, and his duty to comply with the BOCA Code's proscriptions against burning. We disagree. The question of whether a duty exists is a question of law to be decided by the trial court. *Id.* The trial court found, as a matter of law, Holley was not the general contractor of the project. Jones hired Middleton as the drywall contractor, and Middleton subcontracted the drywall hanging job to Ames. Therefore, Holley was not directly responsible for Ames' actions.

The issue of a subcontractor's liability to others at a construction site was addressed in *Mino v. Porter Roofing Co., Inc.,* 785 S.W.2d 558 (Mo.App.1990). Here, an injured employee of a heating subcontractor sued the roofing subcontractor for injuries he suffered when he fell through the roof of a building under construction. The employee went on the roof to check on an air circulation unit. He stepped on a piece of styrofoam which was covering a roof opening, it collapsed, and he fell thirty feet to the building floor. The employee sued the roofing subcontractor alleging he was negligent because he either replaced the plywood which usually covered the roof openings with styrofoam, or he was aware that the openings were covered with only styrofoam and failed to warn others working at the job site. *Id.* at 559. The

court found the roofing subcontractor owed no duty to the employee because: (1) he had no responsibility to make the area of the roof opening safe, (2) he did not create a dangerous condition, and (3) he had no control over or right to control the employee. *Id.* at 561[6]. In fact, the *Mino* court pointed out in a footnote that the employee failed to make a submissible case because the undisputed evidence established the roofing subcontractor had no responsibility to provide any covering for the roof openings. *Id.* at 561 n. 1.

Similarly, the undisputed evidence in this case established that neither Holley nor Webb, as Holley's employee, had a duty to provide Ames and his men with heat. Neither did Holley and Webb have any duty to insure they would not set fire to the premises. Further, Holley is not liable as the possessor of the property as in *Custom Craft Tile v. Engineered Lubricants,* 664 S.W.2d 556, 558[1, 2] (Mo.App.1983), because Jones never relinquished possession and control of the premises to Holley. *See, Halmick v. SBC Corporate Services, Inc.,* 832 S.W.2d 925, 927[5] (Mo.App.1992).

 Jones also failed to show how any of Holley's actions could have been the cause of the building being destroyed by fire. In order to make a submissible case for negligence, a plaintiff must show both causation in fact and proximate cause. *Koerber v. Alendo Bldg. Co.,* 846 S.W.2d 729, 730 (Mo.App. 1992). "Proximate cause" is the causal connection between the actor's conduct and the resulting injury. *Van Vacter v. Hierholzer,* 865 S.W.2d 355, 358[2] (Mo.App.1993). In *Jordan v. General Growth Development Corp.,* the court stated:

> [I]n determining whether a plaintiff's injury was proximately caused by defendant's negligence, one traces the concatenation of events from the injury backward to the alleged act of negligence. The test is simply whether, *after the occurrence,* the injury appears to be the reasonable and probable consequence of the act or omission. (Emphasis in original.)

675 S.W.2d 901, 906[8] (Mo.App.1984).

The fire which destroyed the apartment building was not caused by Holley's "lax fire safety regulations" as Jones alleges. Rather, it was caused by a fire started by one of Ames' workers in a 55–gallon barrel inside the building. Holley had no control over Ames or his employees, nor was he even present on the job site when the fire started.

In arguing Holley's failure to impose the proper safety standards caused the fire, Jones relies on *St. John Bank & Trust Co. v. City of St. John,* 679 S.W.2d 399 (Mo.App. 1984). In *St. John,* this court found the city had a duty to protect a theater owner from random acts of violence by the police. We stated that damage to the theater was a foreseeable result of the city's failure to supervise the officers; and therefore, the city was liable for the damages caused when police officers set fire to the theater. *Id.* at 402–03. However, *St. John* is distinguishable from this case because the city had a duty to control the actions of the police officers while Holley did not have a duty or even the authority to control the actions of Ames or his workers. Point denied.

Judgment affirmed.

CRANE, P.J., and CRANDALL, J., concur.