

# Missouri Court of Appeals

## Southern District

### Division Two

JESSICA WODOHODSKY,     )
                                )
    Plaintiff-Respondent,    )
                                )    No. SD35228
vs.                        )    Filed: March 7, 2019
                                )
JERRY HALL and DAVID HALL,    )
                                )
    Defendants,[1]    )
                                )
and                        )
                                )
DAVID GOURLEY,    )
                                )
    Defendant-Appellant.    )

APPEAL FROM THE CIRCUIT COURT OF HOWELL COUNTY

Honorable Harvey S. Allen, Special Judge

**<u>AFFIRMED</u>**

David Gourley ("Dr. Gourley") appeals the judgment of the trial court following a jury

verdict rendered in favor of Jessica Wodohodsky ("Wodohodsky"), a veterinarian student, for

---

[1] The record reveals that Jeff Gall, an employee of Jerry Hall and David Hall, was also a party defendant, but was dismissed during the lawsuit. Whetstone Veterinary Service, LLC, was a party defendant at trial, but was dismissed prior to the jury being instructed.

injuries and damages she sustained while giving vaccinations to cattle. In three points, Dr. Gourley asserts the trial court erred in denying his motion for judgment notwithstanding the verdict because Wodohodsky failed to make a submissible case on her negligent supervision claim against Dr. Gourley under section 340.222[2] and 20 C.S.R. 2270-4.060(2); failed to make a submissible case on her negligent supervision claim against Dr. Gourley under common law tort; and failed to make a submissible case on her negligent supervision claim against Dr. Gourley in that Wodohodsky failed to offer any expert testimony establishing the applicable standard of care used by members of Dr. Gourley's profession and whether Dr. Gourley breached that standard. Finding no merit to Dr. Gourley's points, we affirm the trial court's judgment.

## Facts and Procedural History

Dr. Gourley is a veterinarian and has an ownership interest in the Whetstone Veterinary Service, LLC ("the Clinic"). His practice is predominantly for large animals. He has been on the Board of Veterinary Medicine since 2005. In addition, Dr. Gourley was an approved veterinary student supervisor through the University of Missouri's ("University") External Food Animal and Theriogenology Teach program ("EFAST").[3] Dr. Gourley had supervised a number of University students in the past through that program.

---

[2] All references to statutes are to RSMo 2000, unless otherwise indicated.

[3] Dr. Gourley was required to fill out an application for the University's EFAST program, which included a description of the Clinic practice and its areas of expertise. Attached to that application was the University's "Proficiencies, Tasks and Competencies" requirements for each student, whereby students were to complete 15 proficiencies, tasks and competencies. Specifically, students had to demonstrate and discuss "the proper use of a bull lead[,]" and the "safe operation of a head catch or squeeze chute." Additionally, students were to "properly administer a subcutaneous injection" and an "intermuscular injection" in various species.

Dr. Gourley was a longtime friend of David Hall ("David").[4] David and his brother Jerry (collectively the "Halls"), owned and operated a cattle production business known as "Ozark Hills Genetics."

In early April 2009, David called Dr. Gourley inquiring whether Dr. Gourley currently had any veterinary students at the Clinic who would like to help vaccinate cattle on the Halls' farms. At that time, Dr. Gourley did not have any students working at the Clinic, so he called Dr. Loren Shultz ("Dr. Shultz") at the University advising that there was an opportunity at the Halls' farms for some students to gain experience outside the classroom.

Wodohodsky and Josh Schaeffer ("Schaeffer"), another fourth-year University veterinarian student, both volunteered.

On April 13, 2009, Wodohodsky and Schaeffer met Dr. Gourley at the Clinic, collected the vaccinations and supplies needed, and traveled to the Halls' farm. Dr. Gourley supervised the cattle processing that day, including vaccinations and pregnancy checks. Also present was Jeff Gall ("Gall"), a relatively new ranch manager of the Halls, with whom Dr. Gourley had worked previously. On that day, only one calf was allowed in the cattle chute at a time, and each calf was properly restrained. At the end of the day, Wodohodsky returned to the Clinic and remained there overnight. The Clinic provided meals and temporary student lodging in their facility.

The next day, Dr. Gourley gave Wodohodsky and Schaeffer a cooler of vaccines to be delivered to the Halls and used that day for cattle vaccinations at a second farm owned by the Halls. Wodohodsky understood that Dr. Gourley would meet them at the farm to supervise as he had the day before. When Wodohodsky arrived at the Halls' second farm, she learned that Gall

---

[4] Because a portion of the involved parties share the same surname, for ease of reference, we refer to the parties individually by their first names. We mean no familiarity or disrespect.

would be handling that day's vaccination operation instead of Dr. Gourley. Gall was not a veterinarian, and was not authorized to supervise University students.

Upon arriving at the Halls' second farm, Wodohodsky observed that the scene was loud and chaotic—the bulls, heifers and calves were not separated. Wodohodsky and Schaeffer were each handed a vaccine gun and instructed to begin inoculating the calves as they ran through the "alleyway." Wodohodsky was concerned for her safety. She requested that the process be done the same way as the day before—with only one calf at a time restrained in the chute. Gall became angry, fearing that this would slow down the process. Wodohodsky's concern was dismissed, and the following procedure was used instead: two calves were "crammed" in the chute, with the first calf restrained in the head catch, and the second calf unrestrained with no squeeze applied.[5]

As Wodohodsky went to vaccinate the calf restrained in the head catch, the unrestrained calf jumped up and crushed her hand against the chute. After a short rest, Wodohodsky resumed her duties. Dr. Gourley later arrived at the farm and Wodohodsky assisted him with pregnancy checks.

Within a few days, Wodohodsky sought medical treatment for her right hand. She obtained an x-ray, which was inconclusive. Wodohodsky was ultimately diagnosed with a trapezium fracture, and development of complex regional pain syndrome and thoracic outlet syndrome. Wodohodsky also underwent placement of a spinal cord stimulator. A Life Care Plan was developed for Wodohodsky setting forth the medical treatment she was expected to need in the future, and the costs associated therewith.

On May 5, 2015, Wodohodsky filed a two-count petition for damages as a result of her injury. The petition asserted, in relevant part, that Dr. Gourley had a statutory duty to follow the

---

[5] The students were also performing castrations.

Missouri Veterinary Medical Board Minimum Standards, 20 C.S.R. 2270-4.060 (2007),[6] which required him to directly supervise Wodohodsky during the vaccination process on the Hall farms; a common law duty to ensure the process was reasonably safe and to ensure Wodohodsky was not exposed to unreasonable risk of harm; and that Dr. Gourley breached those duties.

A jury trial commenced on June 23, 2017. At trial, Dr. Gourley admitted that he had a duty to supervise veterinary students, and to ensure a safe working environment for them.

After the close of Wodohodsky's evidence, Dr. Gourley made an oral motion for directed verdict. Dr. Gourley's counsel argued that Dr. Gourley did not owe a duty to supervise Wodohodsky because the statute and regulation did not apply to the activity that Wodohodsky was performing at the time of her injury, and that the statute and regulation were only intended to protect the public and not veterinarians or veterinary students. Dr. Gourley also argued that Missouri law requires expert testimony to establish a breach of any allegedly applicable standard

---

[6] 20 C.S.R. 2270-4.060 (2007) reads:

(1) Duties of the Supervising Veterinarian—
    (A) The supervising veterinarian shall be responsible for determining the competency of the veterinary technician, veterinary medical candidate, temporary licensee, provisional licensees, veterinary medical preceptee or unregistered assistant to perform delegated animal health care tasks;
    (B) The supervising veterinarian of a veterinary technician, veterinary medical candidate, temporary licensee, provisional licensees, veterinary medical preceptee or unregistered assistant shall make all decisions relating to the diagnosis, treatment, management and future disposition of the animal patient; and
    (C) The supervising veterinarian shall have examined the animal patient prior to the delegation of any animal health care task to either a veterinary technician, veterinary medical candidate, temporary licensee, provisional licensees, veterinary medical preceptee or an unregistered assistant. The examination of the animal patient shall be conducted at such time as good veterinary medical practice requires consistent with the particular delegated animal health care task.
(2) The required levels of supervision of individuals with different levels of training performing various delegated animal health care tasks are designated in the accompanying table, included herein.
(3) The supervising veterinarian must be in good standing. To be in good standing the veterinarian's license(s) must be current and unencumbered.

of care in claims against professionals, and that Wodohodsky had produced no such expert testimony. The motion was overruled.

At the close of all the evidence, Dr. Gourley once again made an oral motion for directed verdict, renewing counsel's arguments previously made.

The jury found Wodohodsky's damages to be $5,000,000, assessing fault as follows: 60 percent to the Halls, 24 percent to Dr. Gourley, and 16 percent to Wodohodsky.

On August 4, 2017, Dr. Gourley filed a "Motion for Judgment Notwithstanding the Verdict, and in the Alternative, Motion for New Trial." Argument was heard on October 2, 2017, at which time the trial court took the motion under advisement. The trial court did not issue a ruling and the motion was deemed denied, pursuant to Rule 78.06.[7] This appeal followed.

In three points, Dr. Gourley asserts the trial court erred in denying Dr. Gourley's Motion for Judgment Notwithstanding the Verdict and in the Alternative Motion for New Trial because: (1) Wodohodsky failed to make a submissible case on her negligent supervision claim pursuant to section 340.222[8] and C.S.R. 2270-4.060(2) (2007); (2) failed to make a submissible case on her negligent supervision claim under common law tort principles; and (3) failed to make a submissible case on her negligent supervision claim, as submitted in the trial court's verdict directing instruction, in that Wodohodsky failed to offer any "expert testimony establishing the

---

[7] All rule references are to Missouri Court Rules (2017).

[8] Section 340.222, RSMo Cum.Supp. 2006 reads:
> A supervisor, as defined in subdivision (19) of section 340.200, is individually and separately responsible and liable for the performance of the acts delegated to and the omissions of the veterinary technician, veterinary medical candidate, temporary licensee, veterinary medical preceptee, unregistered assistant or any other individual working under his or her supervision. Nothing in this section shall be construed to relieve veterinary technicians, veterinary medical candidates, provisional licensees, temporary licensees, veterinary medical preceptees or unregistered assistants of any responsibility or liability for any of their own acts or omissions.

applicable standard of care used by members of Dr. Gourley's profession under the same or similar circumstances, or whether, Dr. Gourley, by his conduct, breached that standard of care."

## Standard of Review

> The standard of review for failures to sustain motions for directed verdict and for JNOV is essentially the same. This Court must determine whether the plaintiff presented a submissible case by offering evidence to support every element necessary for liability. Evidence is viewed in the light most favorable to the jury's verdict, giving the plaintiff all reasonable inferences and disregarding all conflicting evidence and inferences. . . . Neither a motion for directed verdict nor for JNOV should be granted unless there are no factual issues remaining for the jury to decide.

*Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 95 (Mo. banc 2010).

> To successfully prove the tort of negligent supervision, a plaintiff must plead and prove the following: (1) a legal duty on the part of the defendant to use ordinary care to protect the plaintiff against unreasonable risks of harm; (2) a breach of that duty; (3) a proximate cause between the breach and the resulting injury; and (4) actual damages to the plaintiff's person or property.

*Davis v. Lutheran S. High Sch. Ass'n of St. Louis*, 200 S.W.3d 163, 165–66 (Mo.App. E.D. 2006).

## Analysis

Dr. Gourley's Points I and II relate to the trial court's alleged error in denying his motion for judgment notwithstanding the verdict because Dr. Gourley had no legal duty to supervise Wodohodsky. His Point III relates to an alleged deficiency in proof of duty arising from a lack of expert testimony on standard of care. As the dispositive thread running through all three points is the establishment of standard of care and duty, we combine these points to facilitate our treatment of those issues and take them out of order.

Dr. Gourley fails to demonstrate that expert testimony was necessary to establish standard of care or duty based on the matters at issue in this case. "Generally in Missouri, expert testimony is only required when a fact at issue is *so technical or complex* that *no fact-finder could resolve*

7

*the issue without it*." ***Penzel Constr. Co., Inc. v. Jackson R-2 Sch. Dist.***, 544 S.W.3d 214, 228-29 (Mo.App. E.D. 2017) (internal quotation and citation omitted) (emphasis added).  Indeed, "[a] trial court's determination of whether the facts in a case are so complicated that they ***require*** expert testimony ***lies within its discretion***." ***Id.*** at 228 (emphasis added).[9]  Eleven years ago, our Supreme Court dispensed with the requirement of a formulaic (and prosaic) recitation of the standard of care in ***Hickman v. Branson Ear, Nose & Throat, Inc.***, 256 S.W.3d 120, 124 (Mo. banc 2008). Thus, while the standard of care must be evinced objectively—"that is, not merely the personal opinion" of the witness—it need not derive from formulaic recitations that are (by their very nature) "long," "hard to follow or simply boring." ***Id.*** at 123.

> As our Eastern District recently indicated:

> Although electrical engineering is highly technical and complicated in general, most of the problems alleged by [plaintiff], and testified about by its witnesses, were simple enough for a layperson to understand.  For example, testimony that the Plans omitted critical components, called for outdated or non-existent products, and failed to comply with building codes are issues a layperson without any technical training could understand.  Accordingly, [plaintiff] was not required to produce expert testimony to prove the Plans were substantially deficient.

***Penzel***, 544 S.W.3d at 228–29.

Further, our Supreme Court has clarified that even claims grounded in professional licensure and medical treatment do not necessarily require expert testimony.  In ***Stone v. Missouri Dept. of Health & Senior Services***, 350 S.W.3d 14 (Mo. banc 2011), a nurse challenged the revocation of her license based on the absence of expert testimony to evince the applicable standard of care.  The Supreme Court rejected this argument, explaining that the standard of care was

---

[9] *See **Sides v. St. Anthony's Med. Ctr.**, 258 S.W.3d 811, 819 (Mo. banc 2008) ("The use of expert testimony serves to bridge the gap between the jury's common knowledge and the complex subject matter that is 'common' only to experts in a designated field.") (citation omitted).

sufficiently evinced by: (1) the patient's individualized care plan; (2) testimony regarding the individualized care plan; and (3) the nurse's admissions at trial regarding this standard. *Id.* at 23.

The instant appeal involves veterinarians and veterinary students—but the challenged issues do not implicate arcane complexities and intricacies of veterinary science. The matters contended (to the extent relevant in this appeal) did not require the jurors to comprehend advanced biochemistry, microanatomy, pharmacology, specialized techniques of diagnosis, or other highly technical or complex fields of inquiry. *See Stone*, 350 S.W.3d at 24. Rather, boiled down, the challenged matters consisted of: (1) whether only one properly restrained calf should be placed in the squeeze chute at a time; (2) whether circumstances obliged Dr. Gourley to supervise Wodohodsky while she was giving vaccinations; and (3) whether circumstances obliged Dr. Gourley to create safe conditions for Wodohodsky while she was giving vaccinations. Dr. Gourley wholly fails to demonstrate that these are matters so technical or so complex that "no fact-finder could resolve the issue[s] without" expert testimony. *See Penzel*, 544 S.W.3d at 228 (internal quotation and citation omitted).

Dr. Gourley's arguments also "miss[] the distinction between ***admissibility of evidence*** and ***submissibility of a case***." ***Proffer v. Fed. Mogul Corp.***, 341 S.W.3d 184, 187 (Mo.App. S.D. 2011) (emphasis added). "Missouri courts recognize that a defendant can assume a duty." ***Bowan ex rel. Bowan v. Express Med. Transporters, Inc.***, 135 S.W.3d 452, 457 (Mo.App. E.D. 2004). An assumed duty must be performed non-negligently. *See **Woodall v. Christian Hosp. NE-NW***, 473 S.W.3d 649, 659 (Mo.App. E.D. 2015); ***Strickland v. Taco Bell Corp.***, 849 S.W.2d 127, 132

(Mo.App. E.D. 1993). At trial, Dr. Gourley specifically admitted he had a duty to supervise Wodohodsky, and that he had a duty to create a safe working environment for her in that context.[10] Wodohodsky testified that only one calf should be placed in the chute at a time, and that restraints should be applied. In the context of this case, that evidence was sufficient to establish the existence of a common law duty on the part of Dr. Gourley to exercise ordinary care in supervising Wodohodsky. Dr. Gourley's arguments focus on a lack of duty by statute or regulation, but overlook Wodohodsky's pleaded common law theory of negligent supervision.

To the extent Dr. Gourley wished to limit the substantive efficacy of the testimony now at issue, he was obliged to lodge timely objections in that vein, or motions to strike on that basis. Alternatively (or in addition), Dr. Gourley could have obtained a ruling from the trial court delineating the substantive limitations of the now challenged testimony. *See Proffer*, 341 S.W.3d at 187.[11] Dr. Gourley fails to direct this Court to such timely actions, and the record does not reflect that these were made.

Dr. Gourley does not demonstrate that the trial court erred in denying his motion for judgment notwithstanding the verdict. Dr. Gourley's three points are denied.

The judgment of the trial court is affirmed.

WILLIAM W. FRANCIS, JR., P.J. - OPINION AUTHOR

JEFFREY W. BATES, J. - CONCURS

DON E. BURRELL, J. - CONCURS

---

[10] On appeal, Dr. Gourley argues that these admissions were made in the limited context of the EFAST program and that portions of Dr. Gourley's testimony indicated that this program was inapplicable to the facts of this case. However, the fact-finder had the right to believe some, all, or none of Dr. Gourley's testimony—the trial court was not in error when it observed and applied this salient principle.

[11] *See also*, *Nichols v. Belleview R-III Sch. Dist.*, 528 S.W.3d 918, 930 (Mo.App. S.D. 2017) ("Unmade evidentiary objections, shoe-horned into evidentiary sufficiency claims, are not novel before this Court. Neither has our authority expanded, nor our inclination whetted, to entertain this species of Johnny-come-lately argument, since we flatly rejected it in *Proffer*[.]").